## Case No. 2,881.

CLEMENT et al. v. PHOENIX INS. CO.

[6 Blatchf. 481.][1]

Circuit Court, S. D. New York. June 25, 1869.

INSURANCE—KNOWLEDGE OF LOSS—DEFENSES—
EVIDENCE.

1. Where an insurer sets up, as a defence to a policy of marine insurance, that the insured was advised of the loss of the subject insured before he procured the insurance, the insurer assumes the burden of proving such defence.

2. If the attempt is made to prove such defence, by showing that such advice was conveyed by a letter, it must be shown not only that such letter was sent, but that it was received.

3. Knowledge of the loss, before insurance, possessed by a person who is not the agent of the insured for any purpose connected with procuring the insurance, is not notice to the insured.

At law. This was an action [by Francis M. Clement and Elam W. Ditterline, against the Phoenix Insurance Company, of Brooklyn, N. Y.], tried before the court without a jury.

Edwin W. Stoughton, for plaintiffs.

James C. Carter, for defendants.

BLATCHFORD, District Judge. This suit is brought on a policy of insurance, issued by the Phoenix Insurance Company, of Brooklyn, N. Y., to A. H. Cardozo & Co., "on account of whom it may concern," for the sum of $15,600, on the 8th of August, 1867, on 52 hogsheads of tobacco, lost or not lost, valued at $300 per hogshead, on transportation, by steamer and railroad, from Dycusburgh, Kentucky, to New York, being the property described in a bill of lading therefor, dated July 22d, 1867. The tobacco belonged to the plaintiffs, who resided at or near Dycusburgh. On the 22d of July, 1867, they placed it in charge of one McCoy, at Dycusburgh, who, by a written and printed agreement, then signed by him, in the shape of a receipt, or bill of lading, and in which he described himself as a contracting agent, contracted to deliver it at New York, to A. H. Cardozo & Co., by a transportation which was to be by railroad all the way from Cincinnati, and over the Baltimore and Ohio railroad. The tobacco was shipped by McCoy, at Dycusburgh, on board of a steamboat, which carried it down the Tennessee river, to Paducah, where it was shipped on board of a steamboat, called the Mary Erwin, to be carried up the Ohio river to Cincinnati. The bill of lading was forwarded from Dycusburgh, by the plaintiffs, to A. H. Cardozo & Co., at New York, and was received by them on the 2d of August. The insurance was effected at New York, on the 8th of August. The Mary Erwin struck a

log or snag, in trying to back off from a reef, on which she had grounded, on the morning of the 1st of August, about forty miles west of Cincinnati, and sank. The tobacco in question was submerged, and damaged by water. It was rescued, and taken to Cincinnati, and sold there at auction, under the direction of an average adjuster, and netted the sum of $812.11.

The defendants have assumed the burden of proving, as a defence, that A. H. Cardozo & Co. were advised of the loss of the tobacco before they procured the insurance. I do not think this defence is satisfactorily made out by a preponderance of proof. The evidence relied on to show notice of the loss to A. H. Cardozo & Co. is entirely circumstantial. It is claimed that a letter was written and mailed by McCoy, at Cincinnati, on the 5th of August, addressed to A. H. Cardozo & Co., at New York, informing them of the loss of the tobacco. The receipt of that letter by A. H. Cardozo & Co. is not shown, and the two persons who composed the firm of A. H. Cardozo & Co. deny that it was received by them. The fact that a letter, written by McCoy at the same time, to the firm of R. L. Maitland & Co., of New York, informing them of the loss of some property of theirs on board of the Mary Erwin, was received by them, at New York, as early as the 8th of August, is relied on, in connection with testimony as to the regularity of the mail communication between Cincinnati and New York, and with the fact that a letter, mailed at Cincinnati, for New York, on the 5th of August, ought to have reached New York, in due course, not later than the 7th of August, to induce the conclusion that A. H. Cardozo & Co. must have received the letter, notwithstanding their denial, as witnesses, that they received it. But the fact that Maitland & Co. received the letter sent to them, and that the mail was regular, and ought to have brought to Cardozo & Co., by the 7th of August, a letter leaving Cincinnati on the 5th of August, is of no effect to show the receipt of such a letter by Cardozo & Co., unless it be clearly shown that such a letter was sent. The regularity of the mail, and the receipt of the letter by R. L. Maitland & Co., would rather serve to show that no letter was sent to Cardozo & Co., in view of the fact that the receipt of such a letter is denied by Cardozo & Co., and is not directly proved. No copy of the letter claimed to have been sent to Cardozo & Co. by McCoy is put in evidence, and, on the proofs, I am not satisfied that any such letter was sent. The burden of showing that such a letter was sent, as well as that, if sent, it was received, is on the defendants, and they have failed to make out either point. They must make out both, to establish their defence as to notice to Cardozo & Co.

It is also claimed by the defendants, that, as McCoy had notice in Cincinnati, as early

---

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

as the 5th of August, of the loss of the tobacco, and as he was the agent of the plaintiffs to transport the tobacco to New York, and as they had put it into his custody, to be retained therein at least until it reached Cincinnati, he was bound to communicate notice of the loss to Cardozo & Co. by a telegraphic despatch; that, whether he did, or did not, communicate with Cardozo & Co., by writing to them, he was advised, by the face of the receipt, or bill of lading, or contract, which he entered into at Dycusburgh, that the tobacco was to be forwarded to Cardozo & Co., at New York, and that it was bound, immediately on hearing of the loss, to adopt the most speedy means of communication known to the commercial world, for imparting information of the loss to the consignees, in order to guard against a possibility of their effecting an insurance after the loss had happened; and that, in this way, notice to McCoy became, in law, notice to Cardozo & Co. In support of this view, the case of Proudfoot v. Montefiore, 2 L. Q. B. 511, is cited. In that case, one Rees, the agent, at Smyrna, of the plaintiff, who was in England, purchased at Smyrna a cargo of madder, and shipped it to the plaintiff by a vessel which was stranded soon after leaving Smyrna, so that the cargo became a total loss. Rees learned, at Smyrna, of the loss, seven days before the insurance in England was effected by the plaintiff. It appeared that the fact of the loss might have been communicated to the plaintiff by Rees, by telegraph, and it also appeared, from a letter written by Rees, two days after he heard of the loss, to the plaintiff, but which was not received by the plaintiff until after the insurance was effected, that Rees abstained from telegraphing to the plaintiff, for the fraudulent purpose of enabling the plaintiff to insure. Chief Justice Cockburn, in giving the judgment of the court, says: "We think it clear, looking to the position of Rees, as agent to purchase and ship the cargo for the plaintiff, that it was his duty to communicate to his principal the disaster which had happened to the cargo; and, looking to the now general use of the electric telegraph, in matters of mercantile interest, between agents and their employers, we think it was the duty of the agent to communicate with his employer by this speedier means of communication. From the letter of the agent, it appears that, but for the fraudulent motive for his silence, he would, in the ordinary course of his duty, have conveyed the intelligence of the loss to his employer, and would have availed himself of the telegraph for that purpose." On these facts, the court held, that the plaintiff was so far affected by the knowledge by Rees of the loss of the vessel, and of the damage to the cargo, as that the fraud thus committed on the underwriter, through the intentional concealment of the agent, though innocently committed, so far as the plaintiff was concerned, afforded a defence to the underwriter, on a claim to enforce the policy. That case was, undoubtedly, on its facts, properly decided. But no such state of facts exists in the case at bar. Whatever the character of the agency of McCoy was, he was not the agent of the plaintiffs for any purpose connected with procuring insurance on the tobacco. In the case of General Interest Ins. Co. v. Ruggles, 12 Wheat. [25 U. S.] 408, the supreme court considered the question, as to how far the negligence or, misconduct of an agent of an insured party, in withholding from such party knowledge of the loss of the subject insured, where the insurance was effected, lost or not lost, after the loss had happened, would affect such party, where it appeared that knowledge of the loss did not, in fact, reach such party until after the insurance was effected, and he acted in entire good faith. It held, that, if the agent guilty of the negligence or misconduct was the agent of the owner for any purpose connected with procuring the insurance, the owner would be chargeable with the loss. The court say: "It is not, therefore, true, as a universal rule, that either the fact of loss, or the knowledge of such fact by the agent or the principal, at the time the policy is procured, will vacate it. But such knowledge must be brought home to some of the parties or agents connected with the business of procuring the insurance; and then the rule properly applies, which puts the principal in place of the agent, and makes him responsible for his acts." This doctrine must be regarded as the law of this court, and of this case. Under it, a knowledge of the loss by Cardozo & Co., before they procured the insurance, would, of course, vitiate the policy. But a knowledge of it by McCoy cannot affect the plaintiffs. He appears to have been only a contracting agent, to solicit shipments of property, and, in view of his actual attitude toward the plaintiffs, and the extent and character of his agency, I am not disposed to hold that he was under any such obligation to communicate intelligence of the loss to Cardozo & Co., as would vitiate the insurance for his failure to do so. The bill of lading informed him that the tobacco was sent for account of the plaintiffs. He sent a notice of the loss, on the 5th of August, to the plaintiffs, at Dycusburgh, from Cincinnati, but they did not hear of the loss until the 15th of August, and did not receive that letter till after that time. The nearest telegraphic station to Dycusburgh was Paducah, thirty miles' distance. Even if it were shown that a telegraphic despatch, sent by McCoy to Paducah, could have reached the plaintiffs in season for them to have communicated by telegraph with Cardozo & Co., before the insurance was effected, I do not think that the agency of McCoy, or his implied legal obligation, through the plaintiffs, to the underwriters, was such as to make his failure to communicate by telegraph to

*he plaintffs operate as a vitiation of the policy.

I find for the plaintiffs, for the sum of $16,-543.57, as of the 9th of June, 1869.

[NOTE. Subsequently defendants submitted to the court a special finding for signature and filing, which finding the court declined to make. Case No. 2,882, next following.]